COLLIER, United States Marshal, v. VACCARO.

No. 3067.

Circuit Court of Appeals, Fourth Circuit.

June 17, 1931.

Albert F. Flint, of Boston, Mass., and Huntington Cairns, of Baltimore, Md., for appellant.

Stanley E. Hartman, Asst. U. S. Atty., of Baltimore, Md., for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and WATKINS, District Judge.

PARKER, Circuit Judge.

This is an appeal from an order entered in a habeas corpus proceeding discharging one Sarro Vaccaro from the custody of the United States marshal for the district of Mary-land. Vaccaro was arrested under an extradition warrant procured by the British Consul at Baltimore on complaint of the Canadian government, charging him with having committed the crimes of murder, kidnapping, and larceny within the Province of Quebec. A hearing was had before a commissioner specially appointed for the purpose, and Vaccaro was committed on the charges of murder and kidnapping but not on the charge of larceny. He then sued out a writ of habeas corpus and, upon a hearing before the District Judge, was discharged on the ground that the evidence before the commissioner was not sufficient to sustain the commitment. From the order discharging him the marshal has appealed.

The facts are fully stated in the opinion of the court below reported in 38 F. (2d) 862, and need not be repeated in detail. Vaccaro was an informer working with one Mertz, a narcotic agent of the United States government. He and Mertz had been operating in Canada under an arrangement entered into between the American and Canadian authorities and were endeavoring to secure evidence as to the operations of a smuggling ring supposed to be headed by one R. A. Price. They had made contact with Price and had arranged with him and one Bilodeau to deliver certain narcotic drugs in the United States. On the day fixed for the delivery, Vaccaro and Mertz went with Bilodeau to West Stewartstown, Vt., where the drugs were delivered and Bilodeau placed under arrest. Price, fearing to accompany them into the United States because of his having been deported for prior violations of law, had left them at an inn or "line house" on the border, near Canaan, Vt., where he was awaiting their return.

After Bilodeau had been placed under arrest, he agreed to return to the line house with Vaccaro and Mertz and assist them in enticing Price across the national boundary line. All three accordingly returned and engaged Price in conversation, but Bilodeau, instead of helping to entice him across the line, warned him that Vaccaro and Mertz were officers and attempted himself to escape from them. Mertz thereupon shot Bilodeau, and Vaccaro forcibly arrested Price and brought him into the United States. There is quite a dispute as to where the shooting of Bilodeau and the arrest of Price occurred, but there was substantial evidence that both took place in Canada; and the learned judge below held that the commissioner was justified in so finding. He thought, however, that there was no

sufficient evidence to connect Vaccaro with the killing of Bilodeau by Mertz and that Vaccaro was justified in arresting Price and bringing him across the boundary into the United States.

We agree with the judge below in his conclusion as to the charge of murder. Assuming without deciding that Mertz was guilty of murder in the slaying of Bilodeau, we do not think that there is any evidence that Vaccaro in any way aided or abetted Mertz in the slaying. The fact that Vaccaro was present, that he was armed, that he told Mertz to get Bilodeau and not let him get away—none of these things when considered in the light of the surrounding circumstances is any evidence that Vaccaro counseled, aided, or otherwise participated in the slaying of Bilodeau. Vaccaro and Mertz were co-operating in a perfectly lawful enterprise, the detection and apprehension of men engaged in crime. And to fasten criminal liability upon Vaccaro for the slaying of Bilodeau, it is necessary to show that he stepped aside from the lawful enterprise in which he was engaged and participated in or abetted unlawful conduct of Mertz which resulted in Bilodeau's death. We do not think that there is any substantial evidence of this sort in the record. Even if what Vaccaro did amounted to counseling Mertz to make an arrest in Canada which he had no right to make, there is nothing to show that he had anything to do with the shooting of Bilodeau or that he had reason to anticipate that Mertz would shoot him to prevent his escape.

We think that the learned judge erred, however, with respect to the kidnapping charge. At common law kidnapping is "the forcible abduction and carrying away of a man, woman, or child from their own country and sending them to another." 4 Black Com. 259; Sutton v. State, 122 Ga. 158, 50 S. E. 60; 35 C. J. 903. In Canada it is defined by section 297 of the Criminal Code (Rev. St. of 1927, vol. 1, ch. 36, sec. 297), which provides:

"Every one is guilty of an indictable offense and liable to twenty-five years imprisonment who, without lawful authority,

"(a) kidnaps any other person with intent * * *

"(11) to cause such other person to be unlawfully sent or transported out of Canada against his will."

Kidnapping is an extraditable offense under the provisions of the Webster-Ashburton Treaty of 1842 (article 10, 8 Stat. 572, 576 [see Treaty of 1899, art. 1, 26 Stat. 1508]), provided there is such evidence of criminality as according to the laws of the place where the fugitive is found would justify his commitment for trial if the crime had been there committed. Turning then to the statutes of Maryland, we find that, just as in Canada, the common-law crime of kidnapping has been denounced by a statute (Bagby's Annotated Code of Maryland 1924, vol. 1, art. 27, § 316) which provides: "316. Every person, his counsellors, aiders or abettors, who shall be convicted of the crime of kidnapping and forcibly or fraudulently carrying or causing to be carried out of this State any person with intent to have such person carried out of this State, shall be sentenced to the penitentiary for not more than twenty-one years."

There is evidence to support the contention of the Canadian government that Vaccaro forcibly arrested Price in Canada and forcibly carried him across the boundary into the United States. Even if he had the right to make the arrest in Canada for crime committed in his presence, he had no right to carry Price forcibly out of Canada and into the United States; and, if he did so, he violated the statute against kidnapping. To arrest a man for crime is one thing; to carry him out of his country and away from the protection of the laws of his domicile is another and very different thing. An arrest may be made upon a warrant issued by a peace officer and in proper cases without a warrant. It may be made by minor officials and in some cases even by persons who are not officers at all. A person may be carried out of the country to answer for crime, however, only by the authority of the highest executive officials and in accordance with treaty provisions governing extradition. An unlawful arrest is merely an offense against the peace and dignity of the state; an unlawful carrying of a citizen beyond its boundaries to be dealt with by the laws of another state is a violation of the sovereignty of the former.

And it is no defense to the crime of kidnapping that an accused may have thought that he had a right to arrest and carry the person arrested out of the country or that he did not intend to violate the law. The gist of the offense is the forcible carrying out of the state; and where this intention is shown to have existed, it is immaterial that accused may have thought that he was act-

**20**

ing within the law. Ignorantia legis neminem excusat. See 35 C. J. 904; 8 R. C. L. 297; Com. v. Blodgett, 12 Metc. (Mass.) 56, 81; State v. Holland, 120 La. 429, 45 So. 380, 14 Ann. Cas. 692; Ker v. Illinois, 119 U. S. 436, 7 S. Ct. 225, 30 L. Ed. 421.

 It is contended in behalf of petitioner that he should be discharged because all of the evidence offered to show the commission of the crimes whereof he stands charged was by deposition. The argument is that while the depositions would be admissible under Rev. St. § 5271 (18 USCA § 655), to connect the defendant with a crime shown to have been committed in a foreign country, the fact that the crime was committed in such foreign country must be established aliunde. We cannot accept such a distinction. The statute in question provides:

"*Evidence on hearing.* In all cases where any depositions, warrants, or other papers or copies thereof shall be offered in evidence upon the hearing of any extradition case under this chapter, such depositions, warrants, and other papers, or the copies thereof, shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that any deposition, warrant or other paper or copies thereof, so offered, are authenticated in the manner required."

There is nothing in the language of this section which would justify the distinction urged upon us. On the contrary, it expressly provides that depositions "shall be received and admitted as evidence on such hearing for all the purposes of such hearing"; and, of course, one of the purposes of the hearing is to determine whether there is reasonable ground to believe that a crime has been committed against the laws of the complaining country as well as whether there is reasonable ground to believe that the accused is guilty of the crime. To hold that it is incumbent upon the foreign government to produce witnesses to show that the crime was committed within its territory would circumscribe the operation of the statute without reason and would defeat the very purpose for which it was enacted. As said by the Supreme Court in Bingham v. Bradley, 241 U. S. 511, 517, 36

S. Ct. 634, 637, 60 L. Ed. 1136: "It is one of the objects of section 5271 to obviate the necessity of confronting the accused with the witnesses against him; and a construction of this section, or of the treaty, that would require the demanding government to send its citizens to another country to institute legal proceedings, would defeat the whole object of the treaty. Rice v. Ames, 180 U. S. 371, 375, 21 S. Ct. 406, 45 L. Ed. 577, 581; Yordi v. Nolte, 215 U. S. 227, 231, 30 S. Ct. 90, 54 L. Ed. 170, 172."

 We think that there was error, therefore, in the action of the court below in holding that there was no evidence to sustain the charge of kidnapping. It is for the commissioner, or other committing magistrate, to determine whether upon the evidence adduced before him there is reasonable ground to believe that the crime charged has been committed, and the writ of habeas corpus cannot be used for reviewing what the magistrate has decided with regard thereto. Upon such writ the only matters open to inquiry are whether the committing magistrate had jurisdiction, whether the offense charged is within the treaty, and whether there was competent legal evidence warranting the finding that there was reasonable ground to believe the accused guilty. Fernandez v. Phillips, 268 U. S. 311, 312, 45 S. Ct. 541, 69 L. Ed. 970; Collins v. Loisel, 259 U. S. 309, 315, 42 S. Ct. 469, 66 L. Ed. 956; Ornelas v. Ruiz, 161 U. S. 502, 508, 16 S. Ct. 689, 40 L. Ed. 787; In re Stupp, 12 Blatch. 501, 23 Fed. Cas. page 296, No. 13,563.

This does not mean, of course, that the Secretary of State must surrender petitioner to the Canadian authorities. It means merely that the courts may not upon a writ of habeas corpus review the evidence and discharge the prisoner where he is charged with an offense covered by the treaty, where the committing magistrate had jurisdiction to commit him, and where there was competent legal evidence before such magistrate which warranted him in finding that there was probable ground to believe the prisoner guilty. Notwithstanding the discharge of the writ, the Secretary of State may review the evidence before the magistrate and decide whether the case presented is one calling for the surrender of the accused to the authorities of the foreign country. Rev. St. § 5272 (18 USCA § 653); 17 Ops. Attys. Gen. 184. In this case he may, and no doubt will, give consideration to the contention that accused, in attempting to apprehend Price, was oper-

ating under instructions of his superior and that he had been sent to work in Canada with the sanction of the Canadian authorities. This, however, is a matter for the executive to pass upon and not for the courts. If petitioner should be surrendered to answer the charge of kidnapping, there is no ground to apprehend that he will be tried on the charge of murder, as to which we have held that there was no substantial evidence of guilt. We cannot assume that a friendly government, in violation of article III of the Treaty of July 12, 1889 (26 Stat. 1509), would try the accused on any other charge than that for which he was surrendered to be tried. Bingham v. Bradley, supra, 241 U. S. 511, 514, 36 S. Ct. 634, 60 L. Ed. 1136; Kelly v. Griffin, 241 U. S. 6, 15, 36 S. Ct. 487, 60 L. Ed. 861.

So far as the order below released petitioner from custody under commitment on the charge of murder, it will be affirmed. So far as it released him under the commitment on the charge of kidnapping, it will be reversed.

Affirmed in part; reversed in part.