**VILLAREAL et al. v. HAMMOND, Marshal.**

No. 7536.

Circuit Court of Appeals, Fifth Circuit.

Dec. 6, 1934.

---

504

Leonard Brown, of San Antonio, Tex., for appellants.

A. W. W. Woodcock, Sp. Asst. to the Atty. Gen., and Douglas W. McGregor, U. S. Atty., and Brian S. Odem, Asst. U. S. Atty., both of Houston, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

To obtain a reward of $750 offered for the arrest in the United States and confinement in jail there of one Lopez, a bond defaulter, who had escaped into Mexico, appellant Villareal, acting with Hernandez and others, effected his forcible seizure in and abduction from Nuevo Laredo, Tamaulipas, Mexico, to Laredo, Tex. Upon a fugitive complaint charging that they had been guilty of, and had been charged in Mexico with, the crime of kidnapping, appellants were committed to await extradition.

Suing for relief on habeas corpus, they denied that they had committed an extraditable offense. They insisted that what they did was not kidnapping under the extradition treaty, the laws of Mexico, or the laws of Texas. The argument under the treaty provision, Treaty of Feb. 22, 1899, art. 2, subd. 16 (31 Stat. 1820) [1] was that the treaty words, "for any other unlawful end," taken in connection with those preceding it, make it clear that abduction or detention is not, within its meaning, kidnapping. These are but means. Kidnapping occurs, they say, only when the abduction or detention is for "an unlawful purpose or end." Declaring that the end for which Lopez was abducted was not unlawful, but the quite lawful and commendable one of apprehending a known fugitive and bringing him to justice, they insist that within the treaty meaning they did not kidnap him.

Under their second ground they argue that article 609 of the criminal code of the republic of Mexico defining kidnapping [2] does not denounce as an offense what appellants did. They say, first, that they did not seize Lopez "to dispose of him at their will and pleasure" as there denounced; that they seized him to turn him over to justice. And they say, too, that, the proof showing that neither of the appellants actually seized Lopez, they could not be guilty of kidnapping under the Mexican law, which requires seizure, though they did procure his seizure and did aid and assist in making it effective.

The first point under this ground is a repetition of the position advanced under the argument on the treaty provision, that the act of abducting Lopez was not unlawful, but lawful, since made for the purpose of delivering him to American justice. The second is that at most appellants would be accomplices, and there is no provision in the treaty for delivering accomplices up. Their third ground is that, to be extraditable, the offense charged must be a crime in the place where the fugitive is taken, and that the Texas Penal Code, art. 1177,[3] does not denounce as criminal what appellants did. The argument here is that, since the Texas statute denounces "false imprisonment" for the

---

[1] "Kidnapping of minors or adults, defined to be the abduction or detention of a person or persons in order to exact money from them or from their families, or for any other unlawful end."

[2] "The offense of kidnapping is committed by seizing another person by means of violence, intimidation, threats, seduction or deceit (1) to sell him, to place him against his will in the public service or private service in a foreign country, to enlist him in the arms of another nation, or to dispose of him at one's will and pleasure in any other way. (2) To compel him to pay ransom, to deliver any personal property, to extend any provision liable to injure or damage his interests or that of a third party, or to compel another to commit any of the acts mentioned."

[3] Article 1177: "When any person is falsely imprisoned for the purpose of being removed from the State, or if a minor under the age of seventeen years, for the purpose of being concealed or taken from the lawful possession of a parent or guardian, such false imprisonment is 'kidnapping.' If the person kidnapped be under fifteen years of age, it is not necessary that there should be force in order to constitute kidnapping."

purpose of being removed from the state, and does not denounce detaining, abducting, or arresting, it must appear, to sustain a charge of kidnapping, that there was false imprisonment. In the argument under this point, the contention made under each of the other grounds, that seizure of a criminal to deliver him to justice is not unlawful, again appears in this form, that it is not false imprisonment to seize and detain a known criminal for the purpose of delivering him to justice.

It was proven that Villareal, having arranged to have the amount of the reward placed in escrow, went over into Mexico to bring Lopez back. Failing to have him lawfully deported as an American citizen unlawfully in Mexico, he arranged on the Mexican side of the river with Hernandez and some officers of the military to clandestinely seize Lopez and cross him unlawfully from Mexico by force and violence. Having so arranged, he at once took himself over to the American side, went down to the bank of the river at the place agreed upon, a place where under the laws of the United States and Mexico it was unlawful to effect a crossing, and waited there to complete the abduction. Every incident of a kidnapping was present. Induced by Hernandez, his supposed friend, to come out at night to a car containing his abductors, Lopez was seized, handcuffed, struck, carried to the river, and by threats and violence crossed over the river at an unlawful place for crossing, where, as soon as he came in reach, he was seized by Villareal standing there with drawn pistol. For these acts criminal proceedings charging Villareal and Hernandez with the crime of kidnapping Lopez were begun in Mexico, and steps were taken there to invoke the extradition treaty.

The District Judge, believing that the evidence not only warranted, but compelled, the conclusion that petitioners were guilty of the crime of kidnapping, rejected petitioners' contentions, and, denying the writ, remanded them to the custody of the marshal.

■■ Extradition proceedings under section 651, title 18 USCA,[4] must of course be taken in conformity with law, and no one may be detained under them unless for an offense denounced as a crime by the law of the detaining state, and covered by the treaty. It may not be doubted, however, that extradition treaties are to be liberally, not strictly, construed, and, where conflicting interpretation may be put on a treaty obligation, one narrow and restricted, another broad and liberal, the narrow one will be rejected; for the prime consideration in construing such treaties is that "the obligation to do what some nations have done voluntarily, in the interest of justice and friendly international relationships, * * * should be construed more liberally than a criminal statute or the technical requirements of criminal procedure." Factor v. Laubenheimer, 290 U. S. 298, 54 S. Ct. 191, 197, 78 L. Ed. 315; Ex Parte Davis (C. C. A.) 54 F.(2d) 723; Bernstein v. Gross (C. C. A.) 58 F.(2d) 154; Fernandez v. Phillips, 268 U. S. 311, 45 S. Ct. 541, 69 L. Ed. 970; Collier v. Vaccaro (C. C. A.) 51 F.(2d) 17.

■ If, then, the positions appellants advance were sufficient to cast doubt on whether the offense of kidnapping, denounced by the Mexican law and covered by the treaty, embraces what was done here, the fact that the government of Mexico has no doubt that it does, coupled with the further fact that what appellants did is generally and univer-

---

4 Section 651: "Fugitives from foreign country. Whenever there is a treaty or convention for extradition between the Government of the United States and any foreign government, any justice of the Supreme Court, circuit judge, district judge, or commissioner, authorized so to do by any of the courts of the United States, or judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within the limits of any State, District, or Territory, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or commissioner, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."

sally regarded under the laws of civilized nations as kidnapping, Collier v. Vaccaro, supra, would cause the doubt to be resolved in favor of the demanding nation. But resort to construction is not necessary here, for it may not be doubted that the evidence was fully sufficient to sustain the charge under the treaty provision, under the statutes of Mexico and under those of Texas. Appellants did not do what they insist over and over again would not have been an offense, arrest Lopez in Mexico for delivery to the lawfully · constituted Mexican authorities. They did not arrest him at all. In violation of the sovereignty of the state where he had sought asylum, they seized him unlawfully, and with force and arms took him unlawfully out of that state and into another to dispose of him at their will and pleasure to obtain a reward.

The order appealed from is affirmed.