610 So.2d 482 (1992)
Ruth JAFFE, Appellant,
v.
Hardy M. SNOW, Jr. and Accredited Surety & Casualty Company, Inc., Appellees.
No. 91-1918.
District Court of Appeal of Florida, Fifth District.
November 13, 1992.
Rehearing Denied January 12, 1993.
Steven L. Brannock, of Holland & Knight, Tampa, and Jenny Hatfield-Lyon, of Davis, Ward & Beck, Toronto, Ontario, for appellant.
E. Thom Rumberger and Sharon L. Stedman, of Rumberger, Kirk & Caldwell, Orlando, for appellees.
*483 Raymond T. Elligett, Jr., of Schropp, Buell & Elligett, P.A., Tampa, for Amicus Curiae of the Government of Canada.
M. Roy Goldberg, of Davis, Graham & Stubbs, Washington, D.C., for Amicus Curiae of the International Human Rights Law Group.
W. SHARP, Judge.
Ruth Jaffe appeals from a final summary judgment which denied her petition to recognize and enforce a large money judgment she obtained in Canada against Accredited Surety & Casualty Company, Inc., a Florida company, and its president, Hardy Snow, a Florida resident. The trial judge based his decision not to recognize and enforce the Canadian judgment on the sole ground that to do so would violate the public policy of Florida. We agree and affirm.
This is an unusually complicated case overlaid by a tide of other court proceedings in Florida, the United States federal courts and Canada.[1] Because the proper application of the public-policy bar to granting comity to the Canadian judgment turns on these unique facts and collateral court proceedings, we will recite them in some detail. We borrow in part from the summary judgment entered below and recitations by other courts which have been called upon to deal with various phases of the Jaffe saga.
The trial judge found:
In 1980, Sidney L. Jaffe ("Mr. Jaffe"), a U.S. citizen, was charged in the Circuit Court of Putnam County, Florida, with 28 counts of violations of the `Florida Uniform Land Sales Practices Law,' section 498.033(31), Florida Statutes (1979). A violation of this statute is a felony crime. After his arrest, Mr. Jaffe posted a $137,500 bail bond written by Accredited in order to secure his release from jail, and immediately went to Canada where he and Mrs. Jaffe (Ruth) took up residence ...
The copy of the bond in the record discloses that Sidney gave as his residence an address in San Francisco, California, and he pledged not to change his address without notice to Accredited. The bond contains the usual promise to appear in the Florida criminal case, and it also gives the surety the express right to apprehend, arrest, and surrender his principal to "the proper official at any time provided by law." This latter provision is consistent with case law in the United States, which permits a bondsman to take his principal by force from any place he is found, within the United States, back to the proper jurisdiction for trial.[2] Apparently the law of Canada is different from Florida's on this issue, and Accredited did not have common law authority to return Sidney from Canada to Florida, under Canadian law. Kear v. Hilton, 699 F.2d 181 (4th Cir.1983).
But, we are getting ahead of the story:
On the day he (Jaffe) was scheduled for trial, Mr. Jaffe failed to appear. A motion for continuance filed by his attorneys was denied, a warrant was issued for his arrest, and Accredited's bail bond was forfeited.[1] The prosecuting attorney then filed a criminal charge of Failure to Appear, section 843.15(1)(a), Fla. Stat. (1979). A violation of this statute is a felony crime. The prosecuting attorney subsequently made two applications to the Florida Governor seeking to extradite Mr. Jaffe from Canada, both of which applications were denied. The record does not show the basis for the denials.[2] *484 Mr. Jaffe remained in Canada and `exhibited a determination to remain there in violation of his undertaking to return to Florida to answer the charges.' Kear at 181, 182.
Snow and Accredited then hired two professional bail recovery agents, Johnson and Kear, to go to Canada, apprehend Mr. Jaffe and surrender him to the Putnam County Sheriff, which they did.[3] Mr. Jaffe was tried, convicted, and sentenced on all 28 counts of Unlawful Land Sales Practices; however, his convictions and sentences were later reversed. His convictions and sentence for Failure to Appear was affirmed. Jaffe I. Contrary to plaintiff's assertion, the Unlawful Land Sales Practices charges were not `unfounded.' As the District Court of Appeal made clear in Jaffe II, the reversals were not based upon insufficient evidence but rather upon the legal insufficiency of the charging document.
[1] Accredited paid the $137,500 to Putnam County. Upon Mr. Jaffe's return to custody there, $37,500 was remitted to Accredited. Putnam County kept the remaining $100,000.
[2] Unlawful Land Sales Practices and Failure to Appear are not among the extraditable offenses listed in the treaty between our two countries. See Art. 2 Treaty On Extradition Between the United States of America and Canada (1976) and annexed schedule, para s.1-30. Consequently, Canada would not have been obligated to surrender Mr. Jaffe on those charges, even if (a) formal extradition request had been made by the Florida Governor. [In Jaffe v. Smith, 825 F.2d 304 (11th Cir.1987), the court said the extradition applications were disapproved because of improper "form."]
[3] The record does not reflect that the circumstances of Mr. Jaffe's apprehension by the bail recovery agents were aggravated. Using a ruse, the agents took Mr. Jaffe into their custody, placed him in mechanical restraints, transported him by automobile across the border into the United States, allowed him to telephone his son, then transported him by airplane to Florida and after landing, took him by automobile to the Putnam County Jail. See Kear.

Prior to the reversal of the land sales counts on appeal, Jaffe was indicted in Putnam County for organized crime charges in connection with the fraudulent land sales. After serving part of his time on the failure to appear crime, Jaffe was paroled. In 1983 he was again allowed to post a bond (for $150,000) to secure his return for trial on the organized crime charges in Putnam County. See Jaffe v. Smith, 825 F.2d 304 (11th Cir.1987).
Jaffe traveled back to Canada, but has not yet reappeared in Florida. The second bond was forfeited in 1985. He has not at this time been brought to trial on those charges.
Safe beyond the borders of the United States:
[i]n 1985, Mr. Jaffe and Mrs. Jaffe brought suit in the Supreme Court of Ontario, Canada, against Snow and Accredited and other defendants seeking money damages for Mr. Jaffe's tortious abduction.[4]
Snow and Accredited appeared in the action through Canadian counsel, and after their motions to dismiss based on grounds of want of personal jurisdiction and forum non conveniens were denied, they declined to further defend the action. On November 22, 1990, the Canadian court entered a separate judgment in favor of Mrs. Jaffe only[5] against Snow and Accredited awarding her general damages in the amount of $25,000 Canadian dollars; special damages in the amount of $903,481.47 United States dollars and $88,293.56 Canadian dollars; prejudgment interest in the amount of $498,089.33 in United States dollars and $62,458.74 Canadian dollars the total amount to bear interest at the rate of 14% per annum.
[4] In paragraphs 62 and 63 of her Complaint in the Canadian action, Mrs. Jaffe alleged the following damage elements: loss of consortium; mental and physical suffering; loss of income; expenditure of time and effort in an effort to redress the wrongful actions of the defendants and in the administration of her husband's affairs, expenses in visiting and obtaining her husband's release from his wrongful imprisonment.
[5] Curiously the record does not reflect that a judgment was entered in favor of Mr. Jaffe.
The two bondsmen or "recovery agents", Kear and Johnson, were extradited to Canada to stand trial on kidnapping charges. Kear. That court applied to this saga the "old adage that two wrongs do not make a *485 right." Kear. They were convicted and sentenced to "time served."
All parties in this case agree that other possible defenses to the recognition and enforcement of the Canadian judgment, such as lack of personal jurisdiction, or due process have not been sufficiently established by this record to support the summary judgment in Accredited's and Snow's favor. Thus this appeal stands or falls on the public policy grounds enunciated by the trial court.
As the trial judge stated, recognition and enforcement of a foreign country's judgment in Florida is a matter of "comity," and it is up to the courts of this state to make that determination in each particular case.[3] Recognition is not required by the Full Faith and Credit Clause of the Federal Constitution,[4] which is applicable to sisterstate and United States territories' court judgments.[5]
Comity is therefore a more flexible concept than is required by the Full Faith and Credit Clause,[6] although Florida in the overwhelming number of cases, recognizes and enforces the judgments of other nations.[7] This is particularly true of countries having a system of jurisprudence which has developed from the same historical roots as our own, such as Canada.[8]
However, no jurisdiction will give comity to the judgment of another nation that offends that jurisdiction's public policy and sense of moral justice.[9] In this case, had Sidney Jaffe sought to enforce a Canadian judgment against his surety in this state, there are many public policy reasons why a Florida court would refuse to recognize and enforce it, which go far beyond the fact that the law of Canada (bounty hunters cannot single-handedly arrest and return a bond-jumper to the court which accepted the bond) is different than Florida's law. See Kear v. Hilton, 699 F.2d 181 (4th Cir.1983) and In re Walton, 11 O.L.R. 94 (1905).
For one, Sidney Jaffe is a fugitive from justice in the eyes of the Florida courts, having "jumped bond" in this jurisdiction not once, but twice. And, there are still criminal charges pending against him in this state from which he has fled rather than faced. Simply stated, "a fugitive from justice is not entitled to call upon the resources of court for determination of his case." Garcia v. Metro-Dade Police Department, 576 So.2d 751, 752 (Fla. 3d DCA 1991); United States v. One Lot of U.S. Currency Totalling $506,537, 628 F. Supp. 1473, 1475 (S.D.Fla. 1986). Stated another way, a fugitive from justice "cannot eat his cake and have it too." United States v. Eng, 951 F.2d 461, 462 (2d Cir.1991).
The United States Supreme Court and the Florida Supreme Court have long held that courts may dismiss the appeals of criminal defendants who flee the jurisdiction while their appeals are pending. Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970); State v. Gurican, *486 576 So.2d 709 (Fla. 1991). In Molinaro, the court held that while an escape does not strip the case of its character as an adjudicable case or controversy, the escape "disentitles" the defendant to call upon the resources of the court for determination of his claims. 396 U.S. at 365-366, 90 S.Ct. at 498-499.
The federal appeals courts have extended the fugitive from justice doctrine beyond the facts of Molinaro. See, e.g., United States ex rel. Bailey v. U.S. Commanding Officer of the Office of the Provost Marshal, U.S. Army, 496 F.2d 324 (1st Cir.1974) (soldier who was AWOL several times was not entitled to petition for habeas corpus relief); Doyle v. United States Department of Justice, 668 F.2d 1365 (D.C. Cir.1981), cert. denied, 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982) (fugitive from federal court processes could not pursue his lawsuit based on the Freedom of Information Act); United States v. Conforte, 624 F.2d 869 (9th Cir.), cert. denied, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980) (fugitive from justice on convictions for willfully attempting to evade federal employment taxes was not entitled to appeal a Tax Court determination); Schuster v. United States, 765 F.2d 1047 (11th Cir.1985) (fugitive from justice in a related criminal case was not entitled to seek review of a tax assessment made by the Internal Revenue Service).
The fugitive from justice doctrine has also been applied to bar criminal defendants from asserting or defending a claim in related civil forfeiture proceedings. See, e.g., Garcia (appeal from order permitting forfeiture of currency dismissed where appellant was a fugitive from the related criminal charges); United States v. Eng (defendant was disentitled from contesting a civil forfeiture proceeding involving real property if he continued to fight extradition which would return him to the United States to face criminal charges pending against him); United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane, Miami, Dade County, Florida, 868 F.2d 1214 (11th Cir.1989) (record owner of property seized by the government was not entitled to pursue a claim to the property where he was currently residing in Columbia and was avoiding criminal prosecution in the United States); United States v. Forty-Five Thousand Nine Hundred Forty ($45,940) in United States Currency, 739 F.2d 792 (2d Cir.1984) (Canadian who refused to appear at his arraignment on criminal charges in the United States on the ground that his appearance would be in violation of the immigration laws was not entitled to pursue his claim in related forfeiture proceeding); United States v. Certain Real Property Located at 760 S.W. 1st Street, Miami, Florida, 702 F. Supp. 575 (W.D.N.C. 1989) (claimant who was avoiding arrest on drug charges was not entitled to pursue his claims in related civil forfeiture proceedings); United States v. One Lot of U.S. Currency Totalling $506,537 (claimant living in Aruba to avoid arrest on currency violation charges in the United States was not entitled to assert an interest in the money in the civil forfeiture action).
In Garcia, the court dismissed the appeal from a forfeiture order because the appellant failed to appear for his trial on the related criminal charges:
Appellant, on the one hand, wields a sword against our judicial system by escaping criminal prosecution. On the other hand, appellant attempts to shield himself with the protection of his rights in the civil courts.
576 So.2d at 752. Finding this duplicitous approach "repugnant to our inherent sense of equity," the court adopted the federal fugitive from justice doctrine. 576 So.2d at 752. This echoes the sentiment expressed in United States v. One Lot of U.S. Currency Totalling $506,537:
By way of providing context, this court notes that claimant's conduct is inherently inequitable. Claimant has taken advantage of the rights accorded litigants  but wants to avoid the associated duties. He is trying to use this Court's processes as a sword while attempting to simultaneously shield himself from the same type of judicial process. This type of conduct is, simply stated, unfair.
628 F. Supp. at 1476.
Secondly, persons who flaunt the orders of courts in this state will suffer their *487 cases to be dismissed. For example, Florida courts have held that a party adjudged in contempt for disobeying an order of the trial court in the cause appealed from is not entitled to maintain the appeal until he has purged himself of the contempt. Pasin v. Pasin, 517 So.2d 742 (Fla. 4th DCA 1987), rev. denied, 528 So.2d 1183 (Fla. 1988); In re Guardianship of Crawford, 470 So.2d 816 (Fla. 1st DCA 1985); Durham v. Durham, 297 So.2d 857 (Fla. 4th DCA 1974); Morris v. Rabara, 145 So.2d 265 (Fla. 2d DCA 1962). As the court in Morris noted, "it is contrary to the principles of justice to permit one who has flaunted the orders of the court to demand judicial assistance. An appellate court is authorized to enforce an order made by the lower court and which has been violated by a party to the proceedings." 145 So.2d at 267.[10]
Other jurisdictions similarly dismiss an appeal when the appellant is in contempt of the lower court. See, e.g., Stone v. Bach, 80 Cal. App.3d 442, 145 Cal. Rptr. 599 (1978); Stewart v. Stewart, 91 Ariz. 356, 372 P.2d 697 (1962). In Steed v. Woods, 475 S.W.2d 814 (Tex. App. 1972), the court dismissed the former wife's appeal from one order where she was in contempt for violating another order arising out of the same divorce action.
A party in contempt is likewise not entitled to a hearing or a trial of his cause out of which the contempt arose until he purges himself of the contempt. In Palm Shores, Inc. v. Nobles, 149 Fla. 103, 5 So.2d 52 (1941), the court held that the plaintiff had been properly held in contempt for failure to respond to interrogatories propounded by the defendant. The court also held that an outright dismissal with prejudice of the plaintiff's cause of action was too severe a sanction and denied due process of law. However, the court indicated that abatement of the proceedings until the plaintiff purged himself of the contempt would be proper. When it is the defendant who is in contempt, the court may refuse to consider his defenses until he has purged himself of the contempt by complying with the court's order. Whiteside v. Whiteside, 468 So.2d 407 (Fla. 4th DCA 1985). The courts may also refuse to consider a motion for modification filed by the party in contempt. Pollock v. T. & M. Investments, Inc., 420 So.2d 99 (Fla. 3d DCA 1982), rev. denied, 430 So.2d 452 (Fla. 1983). Accord Hilson v. Hilson, 598 So.2d 955 (Ala. Civ. App. 1992); Jones v. Hargrove, 516 So.2d 1354 (Miss. 1987).
The courts have also declined to exercise jurisdiction where the plaintiff or petitioner is in contempt. See, e.g., Mondy v. Mondy, 428 So.2d 235 (Fla. 1983). In Mondy, the mother sought modification of an Idaho divorce decree to give her custody of the parties' children. The mother, however, had been held in contempt of the Idaho court for taking the children in violation of its custody order. The Florida Supreme Court held that Florida should not have exercised jurisdiction in this cause because the Idaho court had jurisdiction of the custody proceeding and because the mother had violated the "clean hands" provisions of the Uniform Child Custody Jurisdiction Act.
Finally, Florida has a well-established public policy that our courts will not permit nor tolerate a person to benefit from his own wrongful act.[11] In this case, Sidney Jaffe breached his contract or bond given to Accredited and accepted by the Florida court that he would not leave his California residence without Accredited's permission, and that he would return promptly to face the criminal charges brought against him. See Reese v. United States, 76 U.S. 13, 19 L.Ed. 541, 9 Wall. 13 (1869). He failed to do so. Although his eventual forceful return by Accredited was wrongful in Canada's eyes, he, too, was at fault for not honoring his bond. Two wrongs do not make a right, and neither wrongdoer should profit. McMichael v. McMichael, 158 Fla. 413, 28 So.2d 692 (1947).
*488 Ruth Jaffe argues she should not be placed in her husband's shoes for purposes of recognition and enforcement of her judgment. However, the nature of her cause of action is derivative[12] and it was necessarily born out of Sidney Jaffe's tort suit for wrongful kidnapping.[13] She was not kidnapped. Sidney was. Any loss of consortium on her part is deemed to be a derivative cause of action in Florida.[14]
The fugitive from justice doctrine bars any claim or defense that is solely derivative of the fugitive's claim. United States v. One Parcel of Real Estate at 7707 S.W. 74th Lane, 868 F.2d at 1217 n. 5; United States v. $129,374 in United States Currency, 769 F.2d 583 (9th Cir.1985), cert. denied, 474 U.S. 1086, 106 S.Ct. 863, 88 L.Ed.2d 901 (1986). In $129,374 in United States Currency, Gerald Geiger had been appointed conservator of his brother Lewis' estate and attempted to intervene in forfeiture proceedings involving property belonging to Lewis, who was a fugitive on the related criminal charges. The court held that if Lewis, as a fugitive from justice, were deprived of presenting any claim or defense in the action as a result of his fugitive status, the conservator of his estate must likewise suffer the same consequences when he seeks to advance the same claim or defense.
Here, Jaffe fled the jurisdiction of Florida in his land fraud case and did not appear at his second fraud trial. The fugitive from justice doctrine would bar any of Jaffe's claims for damages from his return to Florida by his bondsmen. Mrs. Jaffe's claims are derivative of her husband's and likewise are barred under the fugitive from justice doctrine.
Further, if Ruth Jaffe is allowed to recover the expenses and claims she sought and obtained in the Canadian judgment, it would permit her to profit from a wrongdoer's activity. The expenses of retaining counsel to defend Sidney in Florida and her visitation in Florida should rightfully have been spent, because Sidney should rightfully have returned to this jurisdiction to stand trial. To allow her to collect on any of these items as "damages" would be to reward the bondjumper. In addition, any loss of consortium on her part was in the eyes of the Florida courts a rightful loss, because Sidney should have rightfully been separated from her while he stood trial and served time in prison after his conviction. Her loss of consortium was thus the consequence of her husband's own wrong and she should not be allowed to benefit from it. See Ashwood v. Patterson, 49 So.2d 848 (Fla. 1951).
Accordingly, we affirm the judgment below refusing to recognize and enforce Ruth Jaffe's Canadian judgment.
AFFIRMED.
DAUKSCH and DIAMANTIS, JJ., concur.
NOTES
[1] Jaffe v. Sanders, 463 So.2d 318 (Fla. 5th DCA 1984); Jaffe v. State, 438 So.2d 72 (Fla. 5th DCA), rev. dismissed, 436 So.2d 99 (Fla. 1983); State ex rel. Boyles v. Florida Parole and Probation Commission, 436 So.2d 207 (Fla. 1st DCA 1983); Accredited Sur. & Cas. Co., Inc. v. State, 418 So.2d 378 (Fla. 5th DCA 1982); Jaffe v. Smith, 825 F.2d 304 (11th Cir.1987), Jaffe v. Grant, 793 F.2d 1182 (11th Cir.), reh. denied, 803 F.2d 1185 (11th Cir.1986), cert. denied, 480 U.S. 931, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987); Kear v. Hilton, 699 F.2d 181 (4th Cir.1983); Jaffe v. Boyles, 616 F. Supp. 1371 (W.D.N.Y. 1985); Jaffe v. Miller, No. 6103/85 (Ontario Court  General Division Nov. 22, 1990); Jaffe v. Dearing, Nos. 5236/85 & 10453/86 (Ontario Court of Justice Nov. 14, 1991).
[2] See Kear v. Hilton, 699 F.2d 181 (4th Cir.1983); Ker v. People of State of Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886).
[3] Ogden v. Ogden, 159 Fla. 604, 33 So.2d 870 (1947); Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895); Hilarion Llanes, Foreign Nation Judgments, 31 U.Fla.L.Rev. 588, 591 (1979).
[4] U.S. Const. Art. IV, § 1.
[5] Parker v. Parker, 155 Fla. 635, 21 So.2d 141, cert. denied, 326 U.S. 718, 66 S.Ct. 23, 90 L.Ed. 425 (1945).
[6] See Beckwith v. Bailey, 119 Fla. 316, 161 So. 576 (1935).
[7] See Pawley v. Pawley, 46 So.2d 464 (Fla.), rev. denied, 47 So.2d 546, cert. denied, 340 U.S. 866, 71 S.Ct. 90, 95 L.Ed. 632 (1950).
[8] See Willson v. Willson, 55 So.2d 905 (Fla. 1951); Clarkson Co., Ltd. v. Shaheen, 544 F.2d 624 (2d Cir.1976).
[9] The Restatement (Second) of the Foreign Relations Law of the United States § 482 (1987) provides as follows:

(2) A court in the United States need not recognize a judgment of the court of a foreign state if:
* * * * * *
(d) the cause of action on which the judgment was based, or the judgment itself, is repugnant to the public policy of the United States or of the State where recognition is sought ...
See also Hilton v. Guyot, 159 U.S. at 164-167, 16 S.Ct. at 143-145; Al-Fassi v. Al-Fassi, 433 So.2d 664 (Fla. 3d DCA 1983), rev. denied, 446 So.2d 99 (Fla. 1984).
[10] See also Bronk v. Bronk, 46 Fla. 474, 35 So. 870 (1903) (court declined to review appeal from husband in divorce proceedings who was in contempt of court by escaping from custody of the sheriff).
[11] Ashwood v. Patterson, 49 So.2d 848 (Fla. 1951).
[12] "Derivative" is defined as "coming from another; taken from something preceeding ... that which has not its origin in itself, but owes its existence to something foregoing. Anything obtained or deduced from another." Black's Law Dictionary 399 (5th ed. 1979).
[13] In her brief, Ruth Jaffe admits that her damages are those caused by the kidnapping of her husband by Snow and Accredited.
[14] See Ryter v. Brennan, 291 So.2d 55 (Fla. 1st DCA), cert. denied, 297 So.2d 836 (Fla. 1974) (even though a wife's consortium action is her own property right, the action is dependent upon proof of negligence on the part of the defendant and in that sense, is derivative from her husband).