**Sidney L. JAFFE, Petitioner-Appellant,**

v.

**Jim SMITH and Richard L. Dugger, Respondents-Appellees.**

No. 86–3540.

United States Court of Appeals, Eleventh Circuit.

Aug. 21, 1987.

Fletcher N. Baldwin, Jr., Gainesville, Fla., for petitioner-appellant.

Richard B. Martell, Asst. Atty. Gen., Daytona Beach, Fla., for respondents-appellees.

Before FAY and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Sidney L. Jaffe appeals from the denial of his petition for a writ of habeas corpus by the United States District Court for the Middle District of Florida. Finding no er-ror in the district court's decision, we affirm.

This case has a lengthy and somewhat complicated history. In August of 1980 Jaffe was arrested in Florida and charged with twenty-eight counts of unlawful land sale practices. He obtained bail in the amount of $137,500.00 from Accredited Surety & Casualty Company ("Accredited") and was released from custody. He then returned to his home in Toronto, Ontario, Canada.

Jaffe failed to appear for the pretrial conference in his criminal case and the judge issued a warrant for his arrest. On May 18, 1981, his case was called for trial and again Jaffe failed to appear. A second arrest warrant was issued. The judge also ordered that the bond be estreated and directed the state attorney to immediately commence extradition proceedings to procure Jaffe's return from Canada. The state attorney submitted two applications for extradition to the Governor of Florida, both of which were disapproved as to form by the Attorney General of Florida.

Accredited did not receive notice of the May 18th bond forfeiture until June 29, 1981, when final judgment was entered against Accredited in favor of the State of Florida for the use and benefit of Putnam County. Upon motion by Accredited, the court vacated the earlier final judgment on the condition that Accredited place the sum of $137,500.00 in escrow and produce Jaffe within ninety days.

On September 23, 1981, while jogging near his home in Canada, Jaffe was forcibly taken into custody by two professional bail bond recovery agents (i.e., "bounty hunters"). He was driven to the United States-Canadian border where the bench warrant issued by the Florida state court judge was used to secure his entrance into this country. He was then flown to Florida.

Jaffe was tried and acquitted for failure to appear at the pretrial hearing but was found guilty of failure to appear at the trial. He was then tried on the twenty-eight counts of land sale violations. At his

trial on these twenty-eight counts Jaffe moved to dismiss the indictment for lack of jurisdiction on the ground that the kidnapping had resulted in his invalid detention. This motion was denied and Jaffe was convicted on all counts.

Jaffe appealed his conviction to the Florida Fifth District Court of Appeals. While that appeal was pending he filed this habeas corpus petition in the United States District Court for the Middle District of Florida (Jacksonville Division), alleging that the Florida authorities had no jurisdiction to try, convict or incarcerate him because he was abducted from Canada in violation of the Treaty of Extradition, Dec. 3, 1971, United States-Canada, 27 U.S.T. 983, T.I.A.S. No. 8237 ("Treaty"). This federal habeas corpus petition was dismissed for failure to exhaust state remedies. The federal district court issued a certificate of probable cause and Jaffe appealed the dismissal to this court. In the interim, the Florida Fifth District Court of Appeals reversed all twenty-eight of Jaffe's land sale convictions but affirmed his conviction for failure to appear at trial. *Jaffe v. Florida*, 438 So.2d 72 (Fla.5th DCA 1983). Because this decision exhausted Jaffe's state remedies this court dismissed the federal appeal, vacated the district court order dismissing the petition for failure to exhaust and remanded the case to the district court. While his appeal was pending in this court Jaffe filed a separate habeas corpus petition in the Orlando Division of the Middle District of Florida. This petition was also dismissed for failure to exhaust state remedies and Jaffe's motion for a certificate of probable cause was denied.

While Jaffe was incarcerated for his conviction for failure to appear at trial he was indicted on one count of organized fraud, stemming from the same land sale activities. He was released from custody in October 1983 and allowed to post bond on the fraud charge. He returned to Canada and failed to appear for trial on this charge.

On remand of the first habeas corpus petition, the magistrate recommended that the district court decline to accept jurisdiction of Jaffe's case, either because Jaffe "may very well be considered an 'abuser' of the writ," or because he may be considered a fugitive from justice. Should the case not be dismissed for lack of jurisdiction, the magistrate recommended that the court deny the writ on the merits. The district court adopted the magistrate's recommendation that it should decline jurisdiction for the above reasons and held further that if it accepted jurisdiction it would dismiss on the merits. This appeal followed.

The issue raised by Jaffe's petition for a writ of habeas corpus is whether he was removed from Canada in violation of the Treaty, resulting in a deprivation of due process and thereby rendering his Florida trials and convictions invalid. Because his substantive claim is without merit we affirm the district court. In doing so, we find it unnecessary to reach the alternative theories that Jaffe was an abuser of the writ or a fugitive from justice.

 Since 1842 the rendition of fugitives from justice between the United States and Canada has been governed by a number of bilateral agreements, of which the 1971 Treaty on Extradition is but the most recent. Under international law, as recognized in the United States, any nation has the right not to surrender fugitives, but instead to grant asylum. The function of extradition treaties is to create exceptions to this right of other nations.

> Prior to these treaties, and apart from them, it may be stated as the general result of the writers upon international law that there was no well defined obligation of one country to deliver up such fugitives to another, and though such delivery was often made, it was upon the principle of comity, and within the discretion of the government whose action was invoked; and it has never been recognized as among those obligations of one government towards another which rest upon established principles of international law.

*United States v. Rauscher*, 119 U.S. 407, 411–12, 7 S.Ct. 234, 236, 30 L.Ed. 425, 426 (1886).

Absent governmental action, either through a direct violation of a treaty or through circumvention of the treaty, a fugitive has no basis upon which to challenge his/her return to the prosecuting jurisdiction. *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886). In *Ker* the defendant was indicted in Illinois and subsequently apprehended against his will in Peru and returned to Illinois to stand trial. The defendant attacked his conviction on several grounds, one of which involved the defendant's alleged "rights" under a treaty of extradition between the United States and Peru. The court rejected the contention that treaties confer rights of asylum to fugitives, and in discussing the treaty held there was no treaty violation because the defendant was not apprehended under the authority of the treaty or the United States.

In the case before us, the plea shows that although Julian [the agent who seized the defendant] went to Peru with the necessary papers to procure the extradition of Ker under the treaty, those papers remained in his pocket and were never brought to light in Peru; that no steps were taken under them; and that Julian, in seizing upon the person of Ker and carrying him out of the territory of Peru into the United States, did not act nor profess to act under the treaty. In fact, that treaty was not called into operation, was not relied upon, was not made the pretext of arrest, and the facts show that it was a clear case of kidnapping within the dominions of Peru, without any pretense of authority under the treaty or from the Government of the United States.

*Id.* at 442–43, 7 S.Ct. at 228–29, 30 L.Ed. at 424.

█ Unless a defendant can prove that she or he was removed from the asylum state by governmental action, and therefore establish a treaty violation, she or he may not object to trial in the United States. In essence the law is not concerned with the manner in which a criminal defendant finds her or his way into the court.

A defendant may not ordinarily assert the illegality of his obtention to defeat the court's jurisdiction over him. *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 865, 43 L.Ed.2d 54 (1975); *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 511–12, 96 L.Ed. 541 (1952); *Ker v. Illinois*, 119 U.S. 436, 444, 7 S.Ct. 225, 229, 30 L.Ed. 421 (1886); *United States v. Quesada*, 512 F.2d 1043, 1045 (5th Cir.), *cert. denied*, 423 U.S. 946, 96 S.Ct. 356, 46 L.Ed.2d 277 (1975); *United States v. Winter*, 509 F.2d 975, 985–86 (5th Cir.), *cert. denied sub nom. Parks v. United States*, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975); *Voigt v. Toombs*, 67 F.2d 744 (5th Cir.1933), *cert. dismissed*, 291 U.S. 686, 54 S.Ct. 442, 78 L.Ed. 1072 (1934)....

These precedents

rest on the sound basis that due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will.

*Frisbie v. Collins*, 342 U.S. at 522, 72 S.Ct. at 512.

*United States v. Postal*, 589 F.2d 862, 873–74 (5th Cir.), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979) (footnotes omitted).

█ The present appeal presents a clear case of individual citizens acting outside the parameters of a treaty. As noted earlier, the two applications for extradition filed in Jaffe's case were both rejected as to form by the Attorney General of Florida and no further attempts were made to comply with the requirements of the Treaty. The bondsmen did not purport to act pursuant to the Treaty when they apprehended Jaffe, they carried no papers pertaining to his extradition nor did they approach any Canadian official concerning his extradition. Jaffe's removal from Canada can constitute a treaty violation only if governmental actors were involved, that is if the

government conducted or condoned his removal by means other than those outlined in the Treaty.

In an attempt to prove this necessary "state action" Jaffe argues that his removal was the result of a "tri-party agreement." According to Jaffe his abduction was the result of an agreement between the bondsmen (as agents of Accredited), the Putnam County Commission and either the state trial court or the state attorney's office. Despite these contentions, the state trial court found that there were no facts to indicate that the abduction had the state's imprimatur. At his trial for failure to appear for trial the court heard evidence concerning Jaffe's allegation of "state action" and concluded that

> there is no evidence in this record thus far that this witness [one of the bondsmen] or any other person involved in the taking of the defendant received any instructions, directions, aid, comfort, succor or anything else from any authorized agency of the United States, the State of Florida, [or] the Seventh Judicial Circuit....

(ROA, vol. 3, § 56, att.2, p. 588.) On the basis of this factual determination the state trial court denied Jaffe's motion to strike certain statements made by Jaffe to the bondsman on the ground that the bondsman was acting under governmental authority.

Under 28 U.S.C. § 2254(d) (1977) a presumption of correctness attaches to "a determination after a hearing on the merits of a factual issue, made by a state court of competent jurisdiction in a proceeding to which the applicant for the writ and the state ... were parties...." This presumption is entitled to deference in a federal court unless one of the seven conditions enumerated by the statute is found to exist or unless the court concludes that the state court's determination is not "fairly supported by the record." 28 U.S.C. § 2254(d)(8). *Griffin v. Wainwright,* 760 F.2d 1505 (11th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1992, 90 L.Ed.2d 672 (1986). In this case we find no reason to reject the facts found by the state court

and therefore we are bound by the state court's determination of the absence of state action. For this reason the judgment of the district court is

AFFIRMED.