Kenneth Cedrick McCOY, Plaintiff,

v.

B.J. JOHNSON, et al., Defendants.

Civ.A. No. 1:95–CV–1481–JOF.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 31, 1997.

Arthur Blair Dorminey, Athens, GA, for Plaintiffs.

B.J. Johnson, Jonesboro, GA, pro se, John McGuigan, David H. Flint and Mark W. Forsling, Schreeder, Wheeler & Flint, Paula Morgan Nash, Office of Fulton County Attorney, Atlanta, GA, for Defendants.

*ORDER*

FORRESTER, District Judge.

This matter is before the court on Plaintiff Kenneth McCoy's motion for default judgment and other sanctions [39-1, 39-2].

## I. BACKGROUND

On June 12, 1993, Plaintiff filed his complaint alleging that Defendants had violated his constitutional rights guaranteed by the Fourth, Fifth, Ninth, and Fourteenth Amendments. This court subsequently, pursuant to Plaintiff's motion, dismissed Defendants Sheriff of Fulton County, Fulton County, and Grady Gable with prejudice [34-1, 35-1]. On February 5, 1996, Plaintiff moved this court for default judgment and/or sanctions against Defendant Johnson for failing to appear at his deposition and for failing to respond to any discovery requests [36-1].

On August 12, 1996, the court denied Plaintiff's first motion for default judgment against Defendant Johnson [38-1]. However, the court ordered Defendant Johnson to answer Plaintiff's interrogatories within ten (10) days or default judgment would be entered against him. In addition, the court ordered Defendant Johnson to attend his deposition, as renoticed by the Plaintiff, and to reimburse Plaintiff for attorney's fees.

On October 4, 1996, Plaintiff filed a second request for default judgment against Defendant Johnson due to his failure to comply with this court's August 12, 1996 Order. Plaintiff also requested that Defendant Johnson be ordered to pay the attorney's fees incurred in preparing the new motion.

## II. DISCUSSION

■ When a party in a lawsuit refuses to comply with the other party's discovery requests, it is within the discretion of the district court to apply various sanctions, including entering default judgment under Fed.R.Civ.P. 37. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir.1987). However, due to the severity of the sanction of default, it should be imposed only as a last resort. *Adolph Coors Co. v. Movement Against Racism*, 777 F.2d 1538, 1542 (11th Cir.1985). Only if the defendant's noncompliance with discovery is due to willful, bad faith, or flagrant disregard of court orders should default judgment be entered. *Id.* at 1542 (citing *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1095–96, 2 L.Ed.2d 1255 (1958)); *Hashemi v. Campaigner Publications, Inc.*, 737 F.2d 1538, 1539 (11th Cir.1984). "Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment." *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir.1993).

■ In the present case, Defendant Johnson, proceeding *pro se*, filed an answer to Plaintiff's complaint on July 3, 1995. However, since that time he has failed to respond to any of Plaintiff's discovery requests and has avoided all of Plaintiff's counsel's numerous efforts to contact him (*See* Declaration in Support of Motion). Although answers to Plaintiff's interrogatories have been due for almost a year, Defendant has not answered them, objected to their content, or requested an extension of time to complete them. Furthermore, Defendant Johnson has not made any appearance in opposition to Plaintiff's motion to compel and motions for sanctions. Finally, this court, in its August 12, 1996 Order, explicitly informed Defendant that his failure to respond to the interrogatories within a set time would result in a default judgment entered against him. Defendant, however, flagrantly disregarded this court's clear warning of the implications of not responding. Further, the court finds that Defendant's disregard of his responsibilities under this lawsuit is willful and in bad faith. Since he filed his answer, Defendant has made absolutely no effort to comply with discovery requests or this court's Order, nor has he offered the court any reason for his repeated failures. Indeed, by his constant flouting of the judicial system, he has disrupted this lawsuit and wasted judicial resources. Since Defendant has failed to respond to even the court's threat of default judgment, there is no indication that any lesser sanctions would prevent him from further flouting discovery orders. Accordingly, the court believes that the entering of default judgment against De-

fendant Johnson would be the appropriate remedy. *See Buchanan*, 820 F.2d at 361.

▮ While defaulting defendants are deemed to have admitted the plaintiff's well-pleaded allegations of fact, default judgment should not be entered unless the plaintiff's claim is legally sufficient. *Nishimatsu Constr. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir.1975) [1]; *Bruce v. Wal-Mart Stores, Inc.*, 699 F.Supp. 905, 906 (N.D.Ga.1988); *Fidelity & Deposit Co. of Maryland v. Williams*, 699 F.Supp. 897, 898 (N.D.Ga.1988). Accordingly, before entering default judgment, the court must determine if Plaintiff's claim is legally sufficient.

Plaintiff brings his suit to recover for constitutional violations pursuant to 42 U.S.C. § 1983. According to Plaintiff's complaint, he was arrested for auto theft and released on a bond provided by Defendant All Day and All Night Bonding Company. However, after he failed to appear in court, a bench warrant was issued for his arrest. Plaintiff alleges that on June 9, 1993, Defendant Johnson, a bounty hunter employed by Defendant All Day and All Night Bonding Company, attempted to arrest him and in the process used unnecessary and excessive force that injured him (Complaint, ¶¶ 16–21). Further, Plaintiff claims that Defendant All Day and All Night Bonding operated under the auspices and authority of Defendant Sheriff of Fulton County (Complaint, introduction).

▮ In order to recover under § 1983, a plaintiff must establish that he has been deprived of a constitutional right by an individual who was acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978). In order to demonstrate that a deprivation occurred under color of state law, a plaintiff must demonstrate that the conduct was "fairly attributable to the state." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). Conduct is attributable to the state when two requirements are met. First, a plaintiff must demonstrate that he has suf-fered a deprivation caused by "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id.* Second, the plaintiff must show that "the party charged with the [constitutional] deprivation [was] ... a person who may fairly be said to be a state actor." *Id.* A private person may be considered a state actor when he has "acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state." *Id.*

### A. *Source of Authority*

In the present case, taking all of Plaintiff's allegations as admitted, Defendant Johnson was a bounty-hunter employed by Defendant All Day and All Night Bonding Company when he sought to arrest Plaintiff. At the time of the attempted arrest and application of excessive force, Plaintiff was a fugitive who had failed to appear for a court date while released on a bond issued by Defendant's employer.

▮ There is no clear Georgia statute that confers on bondsmen the authority to arrest their fugitive principals in Georgia. The right, however, is firmly rooted in the common law. The power of a bondsman to seize his fugitive principal and return him to custody arises from the private relationship between the bondsman and his principal. *Fitzpatrick v. Williams*, 46 F.2d 40, 42 (5th Cir.1931). When a person is arrested and released on bond, he is transferred from the custody of the sheriff to the custody of the bondsman. The control of a bondsman over his principal is "a continuance of the original imprisonment." *Taylor v. Taintor*, 83 U.S. (16 Wall.) 366, 370, 21 L.Ed. 287 (1872); *Coleman v. State*, 121 Ga. 594, 597, 49 S.E. 716 (1905). Therefore, "when a prisoner is out on bond he is still under court control, though the bounds of his confinement are enlarged. His bondsmen are his jailers." *Carlson v. Landon*, 342 U.S. 524, 547, 72 S.Ct. 525, 538, 96 L.Ed. 547 (1952). The bondsmen have an interest in ensuring that

---

**1.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

the principals appear in court, because if they do not appear then the bond will be forfeited. As a result of their custody, bondsmen "have their principal on a string, and may pull the string whenever they please, and render him in their discharge." *Taylor*, 83 U.S. at 371. If the principal refuses to surrender, the bondsman under common law can lawfully arrest him and return him to the sheriff's custody. *Id.* at 371; *Clark v. Gordon*, 82 Ga. 613, 616, 9 S.E. 333 (1889); *Bennett v. State*, 169 Ga.App. 85, 311 S.E.2d 513 (1983). *See Gray v. Strickland*, 163 Ala. 344, 50 So. 152, 153 (1909). Further, the common law conferred on bondsman broad powers with which to effectuate their seizures of principals. As the Supreme Court stated in Taylor, bondsmen:

> may exercise their rights in person or by agent. They may pursue [the principal] into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to rearrest by the sheriff of an escaping prisoner.

*Taylor*, 83 U.S. at 370. *See generally* Annotation, *Surrender of Principal by Sureties on Bail Bond*, 3 A.L.R. 180 (1919); Annotation, 73 A.L.R. 1369 (1931).

■ Accordingly, when a bondsman at common law exercised his right to arrest a fugitive principal, he was exercising an authority that was granted him by the common law of the state. *See also Jackson v. Pantazes*, 810 F.2d 426, 429 (4th Cir.1987) (reaching same conclusion under Maryland common law). As a result, the court believes that the constitutional deprivation alleged in the present case was caused by the exercise of some right or privilege created by the State.

#### B. *State Actor*

■ Having reached the conclusion that the first part of the *Lugar* test has been satisfied, the court must determine whether a bondsman or his agent bounty-hunter is a state actor. The Eleventh Circuit has applied three tests for determining when private conduct may be considered state action for the purposes of § 1983 liability: the public function test, the state compulsion test, and the nexus/joint action test. *Lowe v. Aldridge*, 958 F.2d 1565, 1572 (11th Cir.1992) (citing *NBC v. Communications Workers of America, AFL–CIO*, 860 F.2d 1022, 1026 (11th Cir.1988)). Under the public function test, private actors who perform functions "traditionally the exclusive prerogative of the state" are considered "state actors." *NBC*, 860 F.2d at 1026 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 454–55, 42 L.Ed.2d 477 (1974)). Under the state compulsion test, a private actor whose alleged conduct has been "coerced or at least significantly encouraged" by the government is also considered a state actor. *Id.* Finally, under the nexus/joint action test, when the governmental body and a private actor are intertwined in a "symbiotic relationship," then the private actor's conduct is considered state action. *Id.* at 1027. The primary inquiry under this test is whether "the State has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Id.* (quoting *Jackson*, 419 U.S. at 357–58, 95 S.Ct. at 456–57). Both the Supreme Court and the Eleventh Circuit have recognized that it is not clear whether these three tests are "actually different in operation, or simply different ways of characterizing the necessarily fact-bound inquiry that confronts the Court in such a situation." *NBC*, 860 F.2d at 1026 (quoting *Lugar*, 457 U.S. at 939, 102 S.Ct. at 2754–55). Further, the Eleventh Circuit has cautioned that "only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir.1992).

Plaintiff has made no allegations of any state compulsion on the Defendant. In addition, the authority to arrest does not appear to be a power that is traditionally the exclusive prerogative of the State. *See Id.* at 1131; *White v. Scrivner Corp.*, 594 F.2d 140, 142 (5th Cir.1979); *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442, 1457 (10th Cir.1995). As a result, the court will primarily focus its inquiry on the nexus/joint action test.

As a preliminary matter, the court notes that there are no Eleventh Circuit decisions addressing the issue of whether a private bondsman is a state actor for purposes of § 1983 liability. However, the Eleventh Circuit dealt with a bondsmen issue in *Jaffe v. Smith*, 825 F.2d 304 (11th Cir.1987). In that case, a fugitive who had fled to Canada while released on bond was forcibly abducted by professional bounty hunters and returned to Florida to face trial. *Id.* at 305. After having been tried and convicted, the fugitive filed a habeas corpus petition claiming that he had been seized in violation of an extradition treaty with Canada and that his conviction could not stand. *Id.* at 306. In order to show that he had been taken in violation of the treaty, the fugitive had to show that governmental actors were involved in his abduction. *Id.* at 307. The state habeas court found that the bondsmen had not "received any instructions, direction, aid, comfort, succor, or anything else" from the government, and therefore concluded that the abducting of the fugitive was not governmental action. *Id.* at 308. The Eleventh Circuit relied on the state court's factual findings and also concluded that the abduction was not the result of state action. *Id.* Implicit in the court's decision is the conclusion that a professional bondsman is not a state actor when he arrests a principal unless there is some other indicia of state authority or involvement present.

This conclusion is consistent with the majority of other federal courts that have addressed the issue of whether bondsmen are state actors for purposes of § 1983 liability. *See Landry v. A–Able Bonding, Inc.*, 75 F.3d 200, 204 & n. 3 (5th Cir.1996). These courts have generally held that a bondsman only becomes a state actor when he acts in concert with police officers or in some other way attains state authority. *See Jackson*, 810 F.2d at 429; *Bailey v. Kenney*, 791 F.Supp. 1511 (D.Kan.1992); *Maynard v. Kear*, 474 F.Supp. 794, 801 (N.D.Ohio 1979). *Cf. Scott*

*v. Dixon*, 720 F.2d 1542, 1546 (11th Cir.1983) (Defendant was state actor where he acted in conjunction with and had significant aid from state officials in arresting Plaintiff pursuant to statute authorizing the criminal prosecution of persons who endangered security interests). In *Jackson*, for example, the bondsman entered a house while searching for his principal, and a police officer restrained the principal's mother while the bondsman searched the house. *Jackson*, 810 F.2d at 427–28. The court found that the participation of the police officer in the alleged constitutional violation rendered the bondsman a state actor for purposes of 5 1983 liability. *Id.* at 429. Although the Fourth Circuit also noted in dicta that a symbiotic relationship existed between the state and bondsmen that would make the conduct state action[2], the court is not persuaded by this argument. At the time of the alleged constitutional violation in the present case, Georgia law did not require extensive licensing of bondsmen or bounty hunters. *See* O.C.G.A. §§ 17–6–1, 17–6–2, and 17–7–90. *See also Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 558 (9th Cir.1974) (en banc) (Hofstedler, J., dissenting) (pervasive regulation and licensing of bail system shows that it is integral part of state's pretrial release program), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 103 (1975). By legislation passed in 1994, however, Georgia statutes were amended in order to require the Sheriff to regulate bondsmen and some specific guidelines were established. *See* O.C.G.A. §§ 17–6–1, 17–6–15 & 17–6–50. As the conduct in this case occurred before these new statutes, the issue of whether their licensing provisions alone would render a bondsman a state actor is not before the court.

In the present case, there were no allegations that Defendant Johnson enlisted the aid of law enforcement officers in his attempted arrest. Furthermore, Plaintiff explicitly claims that Defendant did not identify

---

**2.** Bondsmen depend, for their livelihood, upon the judicial use of a bail bond system, and they are licensed by the state. In return, bondsmen facilitate the pretrial release of accused persons, monitor their whereabouts and retrieve them for trial. *See generally* Toborg, "Bail Bondsmen and Criminal Courts," 8 Just.Sys.J. 141, 142–143, 155–156 (1983); Note, "The Hunters and the Hunted: Rights and Liabilities of Bailbondsmen," 6 Fordham, Urb.L.J. 333 (1978).

*Jackson*, 810 F.2d at 430.

himself or his reasons for "accosting" him. When bondsmen unilaterally apprehend their principals without any assistance from law enforcement officials, courts have consistently found them not to be state actors. *See Landry,* 75 F.3d at 204; *Ouzts,* 505 F.2d at 553; *Easley v. Blossom,* 394 F.Supp. 343 (S.D.Fla.1975); *Curtis v. Peerless Ins. Co.,* 299 F.Supp. 429, 435 (D.Minn.1969); *Thomas v. Miller,* 282 F.Supp. 571, 573 (E.D.Tenn. 1968).

As a result, under the facts of Plaintiff's complaint, the court believes that Defendant Johnson was not a state actor when he attempted to arrest Plaintiff and applied unnecessary force. Consequently, Plaintiff has not pled a legally sufficient claim for recovery from Defendant Johnson under § 1983.

As the court has found that Plaintiff has failed to plead a cause of action against Defendant Johnson, the court will exercise its power to dismiss his claim against Defendant Johnson *ex mero motu* for failure to state a claim upon which relief can be granted. In doing so, the court notes that Plaintiff had notice that his claim against Defendant Johnson might be legally insufficient due to the motion for summary judgment filed by former Defendants Fulton County and Sheriff of Fulton County. In that motion, *inter alia,* it was argued that Defendant Johnson was not a state actor. Furthermore, Plaintiff had an opportunity to respond to those arguments and to show why he was entitled to relief when he filed his present motion for default judgment. Finally, the court notes that the Defendants have filed their answers and Plaintiff can no longer amend his complaint as of right. As a result, the court concludes that Plaintiff has had notice and an opportunity to argue the sufficiency of his claim and that therefore *sua sponte* dismissal would not infringe his due process rights. *See Jefferson Fourteenth Assoc. v. Wometco De Puerto Rico, Inc.,* 695 F.2d 524 (11th Cir.1983).

## III. CONCLUSION

Accordingly, Plaintiff's motion for default judgment and other sanctions against Defendant Johnson is DENIED [39–1, 39–2].

In addition, Plaintiff's 42 U.S.C. § 1983 claim against Defendant Johnson is DISMISSED, *ex mero motu,* for failure to state a claim upon which relief can be granted.