**David GREEN and Jennifer Green, Plaintiffs,**

v.

**ABONY BAIL BOND, American Surety Company d/b/a American Underwriters Surety Company, Ronald R. Johnson, Edward Williams, James V. Brown, and John L. Speake, Defendants.**

**No. 6:04–cv–241–Orl–22KRS.**

United States District Court, M.D. Florida, Orlando Division.

March 30, 2004.

Frank T. Allen, The Allen Firm, P.A., Paul G. Byron, NeJame, Harrington & Barker, P.A., Orlando, FL, for plaintiffs.

Douglas R. Beam, Douglas R. Beam, P.A., Melbourne, FL, for defendants.

## ORDER

CONWAY, District Judge.

### I. INTRODUCTION

This cause comes before the Court for consideration of the Defendants', Abony Bail Bond, Ronald R. Johnson, Edward Williams, James V. Brown, and John L. Speake, Motion to Dismiss Complaint (Doc. No. 11), filed March 17, 2004, to which the Plaintiffs, David Green and Jennifer Green, responded (Doc. No. 12) on March 22, 2004. Having reviewed the motion and memoranda, this Court **GRANTS** the Motion to Dismiss (Doc. No. 11). This case is hereby **DISMISSED WITHOUT PREJUDICE** with leave to refile in state court.

### II. BACKGROUND

For the purpose of this Motion to Dismiss, the Court accepts the following facts derived from the Plaintiffs' Amended Compliant for Civil Rights Violations (Doc. No. 5, filed Mar. 4, 2004) as true.[1]

---

1. *See Brown v. Crawford County,* 960 F.2d 1002, 1010 (11th Cir.1992) ("For a motion to

The Plaintiffs, David and Jennifer Green (hereinafter, "the Greens"), are residents of Orange County, Florida.[2] The Defendant, Abony Bail Bond (hereinafter, "Abony"), is a licensed bail bond agency conducting business in Orange County, Florida.[3] The Defendant, American Surety Company d/b/a American Underwriters Surety Company (hereinafter, "American"), insures and/or underwrites Abony's bail bonds.[4] The Defendants, Ronald R. Johnson, Edward Williams, James V. Brown, and John L. Speake are bail bondsmen employed by Abony.[5] This action is for violations of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1983.[6]

After being arrested on misdemeanor charges, Mr. Green procured a $500.00 bond from Abony.[7] He was then released from custody on the condition that he appear before a court.[8] On the scheduled date and time, however, Mr. Green inadvertently failed to appear.[9] Accordingly, the Defendants set out to arrest their principal.[10]

On the night of November 11, 2003, Mr. and Mrs. Green heard a knock at their door.[11] Shortly thereafter, the Defendants busted through the front entranceway of their home with guns drawn.[12] Although the Greens were unarmed, the Defendants aimed their weapons directly at the Plaintiffs' heads.[13] At no time, did the Defendants announce their presence or properly identify themselves.[14]

Startled by the turbulence, the Green's dog began barking.[15] In response, one of the Defendants threatened to shoot the animal.[16] When Mrs. Green attempted to contain her pet, a Defendant forcibly grabbed her.[17] That prompted Mr. Green to warn the Defendants not to touch his wife or treat her in that manner.[18]

At that time, the Defendants converged on Mr. Green, striking him repeatedly with fists, batons, and flashlights.[19] When Mr. Green went to his knees, the Defendants continued their onslaught.[20] In fact, they intensified their attack by incorporating stun guns.[21]

Horrified by the events taking place in his residence, Mr. Green pleaded to the Defendants for his life.[22] In addition, he begged for his wife's assistance.[23] The

dismiss to be granted, plaintiff's complaint, factually accepted as correct, must evidence that there is no set of facts entitling him to relief") (internal citation omitted).

2. *See* Doc. No. 5, ¶ 4 at 2.

3. *See id.,* ¶ 5 at 2–3.

4. *See id.,* ¶ 6 at 3–4.

5. *See id.,* ¶¶ 7–10 at 4–5.

6. *See id.,* ¶ 1 at 1–2.

7. *See id.,* ¶ 13 at 5–6; *see also* ¶ 23 at 9.

8. *See id.,* ¶ 13 at 5–6.

9. *See id.*

10. *See generally id.*

11. *See id.,* ¶ 13 at 5–6.

12. *See id.,* ¶ 14 at 6.

13. *See id.; see also* ¶ 23 at 9.

14. *See id.,* ¶ 23 at 9; *see also* ¶ 14 at 6.

15. *See id.,* ¶ 16 at 6.

16. *See id.*

17. *See id.*

18. *See id.*

19. *See id.,* ¶ 17 at 6–7.

20. *See id.*

21. *See id.*

22. *See id.,* ¶ 18 at 7.

23. *See id.*

Defendants staved off Mrs. Green by threatening to kill her if she moved any closer toward her husband.[24]

Eventually, the Defendants handcuffed Mr. Green, yet, they continued to administer punishing blows and tasars.[25] As a consequence, Mr. Green stood up.[26] When he got to his feet, however, he was thrown into a wall and strangled.[27] This continued until he again fell to the floor.[28]

At the conclusion of the second struggle, Mr. Green found himself on the ground severely hemorrhaging from wounds to his head, back, and face.[29] The violence left blood spattered all over the walls and floors of the house.[30] Seeing her husband in agony, Mrs. Green again attempted to render assistance.[31] When she moved towards her companion, however, a Defendant struck her on the right thigh.[32]

Once the turmoil subsided, Mr. Green informed the Defendants that he was having difficulty breathing, and that he desperately needed an ambulance.[33] A Defendant responded by cavalierly stating "good, die!"[34] Mrs. Green then attempted to call for medical assistance, but the Defendants issued her another stern warning: "step back bitch."[35] On the threat of legal action, the Defendants finally relented, permitting Mrs. Green to call 911.[36]

As a result of his injuries, Mr. Green was rushed to a hospital.[37] There, he was treated for trauma to his head, neck, arms, shoulders, and legs.[38] In addition, a CAT scan was administered to determine if Mr. Green sustained brain damage.[39] Ultimately, Mr. Green required hospitalization for twenty-three days (23).[40] The severity of his injuries spawned a criminal investigation by an Assistant State Attorney.[41]

Against that backdrop, the Plaintiffs filed the instant lawsuit against the Defendants in the United States District Court for the Middle District of Florida.[42] The ten count Amended Complaint alleges deprivation of civil rights (Counts I–V), false arrest and false imprisonment (Count VI), assault and battery (Count VII), negligent training, supervision, and retention (Count VIII), intentional infliction of emotional distress (Count IX), and negligent infliction of emotional distress (Count X).[43] The Plaintiffs seek, *inter alia*, compensatory and punitive damages for their injuries.[44]

Turning to the issue at hand, the Defendants now move this Court to dismiss this action.[45] In that connection, the Defen-

---

24. *See id.*

25. *See id.,* ¶ 19 at 7.

26. *See id.*

27. *See id.*

28. *See id.*

29. *See id.,* ¶ 20 at 7–8.

30. *See id.*

31. *See id.*

32. *See id.*

33. *See id.*

34. *Id.*

35. *Id.,* ¶ 21 at 8.

36. *See id.*

37. *See id.,* ¶ 22 at 8–9.

38. *See id.*

39. *See id.*

40. *See id.*

41. *See id.,* ¶ 23 at 9.

42. *See generally id.*

43. *See generally id.*

44. *See generally id.*

45. *See generally* Doc. No. 11.

dants argue that because 42 U.S.C. § 1983 applies only to state actors, and bail bondsmen are not state actors, the Plaintiffs' Amended Complaint fails to state a claim upon which relief can be granted.[46]

## III. STANDARD OF REVIEW

In deciding a motion to dismiss, the court must accept as true all the factual allegations in the complaint, drawing all inferences derived from those facts in the light most favorable to the plaintiff. *Brown v. Crawford County,* 960 F.2d 1002, 1010 (11th Cir.1992). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Little v. N. Miami,* 805 F.2d 962, 965 (11th Cir.1986). A count may not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of a claim for relief. *See Lopez v. First Union Nat'l Bank,* 129 F.3d 1186, 1189 (11th Cir.1997), *reh'g denied,* 141 F.3d 1191 (11th Cir. 1998), *cert. denied,* 531 U.S. 1052, 121 S.Ct. 656, 148 L.Ed.2d 559 (2000). The threshold of sufficiency for a complaint to survive a motion to dismiss is exceedingly low. *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985). Nevertheless, dismissal is appropriate where a court cannot "identify each of the material elements necessary to sustain a recovery under some viable legal theory." *See Roe v. Aware Woman Ctr. for Choice, Inc.* 253 F.3d 678, 684 (11th Cir.2001), *reh'g denied,* 273 F.3d 395 (11th Cir.2001), *cert. denied,* 534 U.S. 1129, 122 S.Ct. 1067, 151 L.Ed.2d 970 (2002) (internal citation omitted). Moreover, a court should grant a motion to dismiss where the factual allegations in the plaintiff's complaint present a dispositive legal issue precluding relief. *See Marshall County Bd. of Educ. v. Marshall County Gas. Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993).

## IV. LEGAL ANALYSIS

### A. 42 U.S.C. § 1983 GENERALLY

Title 42 U.S.C. § 1983 affords a remedy to plaintiffs deprived of rights, privileges, or immunities secured by the United States Constitution by one acting under color of state law. 42 U.S.C. § 1983.

Accordingly, for a plaintiff to recover under § 1983, there must be a showing of state action. Merely private conduct, nor matter how wrongful, is not actionable under § 1983. *See Focus on the Family v. Pinellas Suncoast Transit Auth.,* 344 F.3d 1263, 1277 (11th Cir.2003).

To satisfy the state action requirement, a plaintiff must demonstrate that the conduct at issue is "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *see also Gene Thompson Lumber Co., Inc. v. Davis Parmer Lumber Co., Inc.,* 984 F.2d 401, 403 (11th Cir.1993). Conduct is fairly attributable to a state where: (1) it is "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible"; and (2) where the party charged with the deprivation is a person who may "fairly be said to be a state actor." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (internal citations and quotations omitted); *see also Patrick v. Floyd Med. Ctr.,* 201 F.3d 1313, 1315 (11th Cir.2000).

---

**46.** *See generally id.*

## B. THE STATE RIGHT OR PRIVILEGE PRONG

In accordance with the "fairly attributable" test, this Court will first consider whether the conduct alleged in the Amended Complaint was caused by the exercise of some right or privilege created by Florida law.

■ According to the Amended Complaint, the individual Defendants here are bail bondsmen, employed by Defendant–Abony, a bail bond agency. *See* Doc. No. 5, ¶¶ 5–10 at 2–5. Bail bondsmen and bail bond agencies are heavily regulated in the State of Florida. In fact, "[a] person may not act in the capacity of a bail bond agent ... or perform any of the functions, duties, or powers prescribed for bail bond agents ... unless that person is qualified, licensed, and appointed as provided [by Florida law]." Fla. Stat. 648.30(1); *see also* Fla. Stat. § 648.24 ("It is the public policy of this state ... that a bond for which fees or premiums are charged must be executed by a bail bond agent licensed pursuant to this chapter in connection with the pretrial or appellate release of a criminal defendant and shall be construed as a commitment by and obligation upon the bail bond agent to ensure that the defendant appears at all subsequent criminal proceedings"); Fla. Stat. § 648.30(3) ("A person, other than a certified law enforcement officer, may not apprehend, detain, or arrest a principal on a bond, wherever issued, unless that person is qualified, licensed, and appointed as provided [by Florida law]").

Since the Defendants' authority here—to effect the arrest of Mr. Green—was derived from Florida law, this Court finds that the Plaintiffs have satisfied the first prong of the "fairly attributable" test. They have alleged a constitutional deprivation (violations of the fourth, fifth, sixth, eight, and fourteenth amendments) caused by the exercise of a right (a bail bondsman

license) created by Florida law. *See Landry v. A–Able Bonding, Inc.*, 75 F.3d 200, 204 (5th Cir.1996) (finding that Plaintiff demonstrated a deprivation caused by the exercise of a privilege created by the State of Louisiana because "Louisiana law allows bail bondsmen to arrest their principals for purposes of returning them to detention facility officers") (internal citation omitted); *Jackson v. Pantazes*, 810 F.2d 426, 429 (4th Cir.1987) (finding that Plaintiff demonstrated a deprivation caused by the exercise of a privilege created by the State of Maryland because Maryland common law allows bail bondsmen to arrest fugitives and return them to custody); *McCoy v. Johnson*, 176 F.R.D. 676, 679–80 (N.D.Ga.1997) (finding that Plaintiff properly demonstrated a deprivation caused by the exercise of a privilege created by the State of Georgia because Georgia common law allows bail bondsmen to arrest fugitives and return them to custody); *see also Dean v. Olibas*, 129 F.3d 1001, 1005 (8th Cir.1997) (finding that Plaintiff properly demonstrated a deprivation caused by the exercise of a privilege created by the State of Arkansas where source of bail bondsmen's authority was rooted in Arkansas law).

## C. THE STATE ACTOR PRONG

Since the Plaintiffs have satisfied the first prong of the "fairly attributable" test, this Court will next consider whether the Defendants were State actors for purposes of § 1983.

■ A private party may be considered a State actor only when one of the following three conditions is met: "(1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ('State compulsion test'); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ('public func-

tion test'); or (3) the 'State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[ ]' ('nexus/joint action test')." *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir.2001) (internal citation omitted).

■ In this instance, the Plaintiffs have not alleged sufficient facts indicating that the State of Florida coerced or significantly encouraged the action alleged in the Amended Complaint. *McCoy v. Johnson*, 176 F.R.D. 676, 680 (N.D.Ga.1997) (dismissing the "State compulsion" test where plaintiffs made no allegations of any State compulsion on the Defendant). Florida law enforcement officers were not present when the Defendants engaged in the knock-down-drag-out struggle at the Plaintiffs' residence. Nor have the Plaintiffs established that the Defendants were performing a public function that was traditionally within the exclusive prerogative of this State. *See id.* ("the authority to arrest does not appear to be a power that is traditionally the exclusive prerogative of the state") (internal citations omitted). Instead, it is apparent that bail bonding is a private function. The right of bail bondsmen to apprehend their principals, after

all, "arises out of a contract between the parties and does not have its genesis in statute or legislative fiat." *Ouzts v. Maryland Nat'l Ins. Co.*, 505 F.2d 547, 551 (9th Cir.1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1681, 44 L.Ed.2d 103 (1975). In any event, history indicates that bail bonding has never been an exclusive privilege of the sovereign. Rather, since the inception of the American legal system, bail was administered by private citizens and businessmen.[47] As such, this Order will concentrate on whether the State of Florida has so far insinuated itself into a position of interdependence with the Defendants that it could be considered a joint participant in the alleged deprivation of Plaintiffs' constitutional rights. *See McCoy*, 176 F.R.D. 676 at 680.

■ In spite of increased state regulation over bail bondsmen, the majority of courts continue to hold that they are not state actors for purposes of § 1983. In *Landry v. A–Able Bonding, Inc.*, 75 F.3d 200 (5th Cir.1996), for example, the Fifth Circuit Court of Appeals concluded that a bail bondsman was not a state actor under § 1983 because "he neither purport[ed] to act pursuant to [a] warrant, nor enlist[ed] the assistance of law enforcement officials

---

47. *See* Jonathan Drimmer, *Article: When Man Hunts Man: The Rights and Duties of Bounty Hunters in the American Criminal Justice System*, 33 Hous. L.Rev. 731 (1996):

The American system of bail, and the right of bounty hunters to search for and arrest criminal defendants, descends directly from the English common law. The origins of the practice of release on bail pending trial, antedating pre-Norman England, are unknown. Initially, sureties were literally bond body for body. If the defendant failed to appear for trial, the surety was liable to suffer the punishment that was hanging over the head of the released prisoner. Alternatively, sometimes an entire township served as surety for one of its citizens, and thus its populace was collectively responsible for the appearance of the accused.

By the thirteenth century, however, the system of bail had evolved to resemble its present state. Magistrates traveled between counties and were present in any particular locality for only a few months each year. To prevent prolonged detention of untried suspects, the sheriff often released the prisoner into the custody of a surety. Generally, a surety was a responsible individual from the community and an acquaintance of the accused who promised to pay the sheriff a certain sum, sometimes by the forfeiture of real property, in the event of the prisoner's nonappearance at trial.

*Id.* at 744–745 (internal citations, quotations, and footnotes omitted).

in executing [a] warrant." *Id.* at 204–05. Likewise, in *Ouzts,* 505 F.2d at 555, the Ninth Circuit Court of Appeals concluded that a bail bondsman was not a state actor because bail bondsmen are "in the business in order to make money [for themselves] and [are] not acting out of a high-minded sense of devotion to the administration of justice." *See also McCoy,* 176 F.R.D. 676 at 681–82 (reviewing common law rights of bail bondsmen and finding that defendant-bail bondsman was not a state actor for purposes of § 1983 where complaint failed to allege that he enlisted the aid of law enforcement agents, or otherwise identified himself or his reasons for "accosting" the plaintiff) (collecting cases); but *see Jackson v. Pantazes,* 810 F.2d 426, 430 (4th Cir.1987) (finding that bail bondsmen are state actors for purposes of § 1983 because "the symbiotic relationship between bail bondsmen and the Maryland criminal court system suffices to render [searching for and arresting a fugitive-principal] state action").

While the Eleventh Circuit Court of Appeals has yet to address the issue of whether bail bondsmen are state actors for purposes of § 1983, the appellate court's decision in *Jaffe v. Smith,* 825 F.2d 304 (11th Cir.1987) is instructive on this point.

In *Jaffe,* Florida bounty hunters operating in Canada abducted the defendant and returned him to the State of Florida. *See id.* at 305. There, he was tried and convicted on twenty-eight counts of unlawful land sale practices. *See id.* at 305–06. The defendant then filed a writ of *habeas corpus* petition arguing that Florida authorities had no jurisdiction to try, convict, or incarcerate him because his abduction from Canada violated the 1971 Treaty on Extradition between the United States and Canada. *See id.* at 306. That treaty affords Canada the right to either surrender fugitives or grant them asylum. *See id.* "Absent governmental action," however, "either through a direct violation of a treaty or through circumvention of the treaty, a fugitive has no basis upon which to challenge his/her return to the prosecuting jurisdiction." *Id.* at 307 (internal citation omitted).

Characterizing bounty hunters as "individual citizens acting outside the parameters of [the] treaty," the Eleventh Circuit affirmed the district court's denial of the defendant's *habeas corpus* petition. *See id.* at 307–308. In doing so, the appellate court accepted the factual findings of a lower state court which concluded that the bail bondsmen were not state actors because they received no "instructions, directions, aid, comfort, succor or anything else from any authorized agency of the . . . State of Florida." *Id.* at 308 (internal citation omitted).

Following *Jaffe,* this Court finds that the Defendants were not state actors for purposes of § 1983 when they attempted to effect the arrest of Mr. Green. Although their authority to arrest the Plaintiff derived from the State of Florida, the Amended Complaint is bereft of allegations indicating that they received instructions, directions, aid, comfort, succor, or anything else from the State in pursuing their principal. Instead, the Amended Complaint indicates that were acting unilaterally for their own private financial interest. "When bondsmen unilaterally apprehend their principals without any assistance from law enforcement officials, courts have consistently found them not to be state actors." *McCoy,* 176 F.R.D. at 682 (collecting cases). This is especially the case where bail bondsmen do not identify themselves as agents of the state. *See id.* at 681–82.

The fact that the State of Florida qualifies, licenses, and appoints its bail bondsmen is unavailing. If that were the litmus test, then doctors, engineers, lawyers, pri-

vate investigators, and even concealed weapons holders would be considered state actors violating the proscription that "[o]nly in rare circumstances can a private party be viewed as a 'State actor' for section 1983 purposes." *Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir.2001) (internal citation omitted).[48]

## V. CONCLUSION

Based on the foregoing, it is **ORDERED** that:

1. The Defendants', Abony Bail Bond, Ronald R. Johnson, Edward Williams, James V. Brown, and John L. Speake, March 17, 2004 Motion to Dismiss Complaint (Doc. No. 11) is **GRANTED**. Since bail bondsmen are not state actors, the Plaintiffs have no cause of action against the Defendants pursuant to 42 U.S.C. § 1983. Accordingly, the Plaintiffs', David Green and Jennifer Green, 42 U.S.C. § 1983 claim is **DISMISSED WITH PREJUDICE**.

2. As a result of the fact that the Amended Complaint for Civil Rights Violations (Doc. No. 5, filed Mar. 4, 2004) fails to indicate an alternative basis for original jurisdiction, this Court declines to exercise supplemental jurisdiction over the Plaintiffs' remaining state law claims against the Defendants. *See* 28 U.S.C. § 1367(c). Those claims are hereby **DISMISSED WITHOUT PREJUDICE** with leave to refile in state court within thirty days from the entry of this Order.

3. The Clerk of Court shall **CLOSE THE FILE**.

4. All pending motions are hereby **DENIED as MOOT**.

---

**48.** Although American did not join the Defendants in moving to dismiss this action, for the same reasons stated above, this Court finds that it is not a state actor.